Continuation of Application for Search Warrant

INTRODUCTION

I, Dustin Hurt, being first duly sworn hereby state as follows:

1. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically, Title 18, U.S.C. § 922(o), possession of a machinegun, Title 21, U.S.C. § 841(a)(1), possession with intent to distribute controlled substances and Title 18, U.S.C. § 922 (g)(1), felon in possession of firearm / ammunition (collectively "the Subject Offenses") will be found on the electronic device (hereinafter the "Subject Device"), specifically:

   a. One gray/silver iPhone with a black cracked screen belonging to Julian Douglas, currently in the custody of ATF Lansing.

There is also probable cause to search the device described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes as further described in Attachment B.

2. This Application requests the issuance of a warrant to examine the Subject Device, which was seized on June 4, 2025, during the execution of a federal search warrant (FSW) (Case No. 1:25-MJ-301) for 4600 South Pennsylvania Avenue Apt #E51 Lansing, MI, Douglas' person, and Douglas' vehicle. The Subject Device was located on Douglas' person during the execution of the FSW.

3. I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice, since October of 2018, I am currently assigned to the Detroit Field Division, Lansing Satellite

1

Office. Prior to being assigned to the Lansing Office, I was assigned to the ATF Flint Field Office.  I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  Before working for the ATF, I was employed by the Michigan Department of State Police (MSP) for approximately seven years. Before working for the Michigan State Police, I was a local police officer for the Grand Ledge (MI) Police Department for approximately three years. I held numerous positions with the MSP, including Detective Sergeant in the Polygraph Unit and Task Force Officer with the FBI's Safe Streets Task Force (Flint, MI). During my employment with ATF and MSP, I have conducted or participated in numerous criminal investigations focused on firearms, armed drug trafficking, violent crime, criminal street gangs, and other violations of federal law. The facts in this Continuation come from my personal observations, training, experience, and information obtained from other witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.     The information set forth in this continuation for a search warrant is based upon my personal knowledge, as well as information provided to me by other witnesses. As this continuation is submitted solely to establish probable cause for the search of the Subject Device, I have not set forth all of the information known to me or to other law enforcement officers concerning this matter.

5.     I know that firearm and drug traffickers frequently utilize mobile telephones to facilitate firearm and drug trafficking. Mobile phones often contain evidence indicative of firearm and drug trafficking, including records of incoming and

outgoing calls and text messages with suppliers of narcotics; voicemail messages; photographs of drugs, photographs of firearms and ammunition, coconspirators, or currency; and, in the case of "smart phones," Global Positioning System (GPS) data indicating the location of the device at given points in time, providing evidence that the device was in high drug trafficking areas.

6. Additionally, firearm and drug traffickers typically maintain and use multiple mobile phones to facilitate sales, and frequently switch phones to evade detection by law enforcement. Further, these types of devices are frequently used to access social media websites such as Facebook, Instagram, etc.

7. I know that individuals who illegally possess firearms and ammunition often utilize cell phones to acquire, document possession, and distribute firearms and ammunition utilizing text messaging, photographs/videos, calls, emails, social media, etc.

8. I am currently investigating Julian Malik Douglas, date of birth December XX, 2000.[11] Based on the facts set forth in this Continuation, there is probable cause to believe that Douglas committed the Subject Offenses and that evidence of the violations will be found on the Subject Device that was located on the person of Julian Malik Douglas.

---

[1] Douglas' full date of birth is known to me; I have not included it here as to protect personal identifiable information.

**PROBABLE CAUSE**

9.     In April of 2025, I was contacted by an ATF confidential informant, hereinafter referred to as ATF1[2], reference Julian "Jules" Douglas purchasing machine gun conversion devices (MCDs), commonly referred to as "Glock Switches," from the dark web and selling them. In addition to MCDs, ATF1 advised that Douglas is selling fentanyl, cocaine, and a variety of pharmaceutical and street pills. ATF1 provided that Douglas' phone number is (517) 528-4167 ("4167").[3]

10.    As part of this investigation, I queried Douglas' computerized criminal history (CCH) which yielded the following:

- Douglas pled guilty to Assault with a Dangerous Weapon on June 20, 2019, in the 56th Circuit Court of Michigan. CFN: 1800000020042.

- Douglas was arrested multiple times for firearm narcotics related criminal violation as a juvenile but received 7411 – HYTA or a nolle pros for all of them.

11.    During the week of April 23, 2025, ATF1 contacted Douglas using phone number 4167 and coordinated a controlled purchase of an MCD and a controlled substance from Douglas. The audio/visual recorded controlled purchase occurred at

---

[2] ATF1 has a misdemeanor conviction for retail fraud, a conviction for child support payments, and an assorted traffic and drug-related convictions. ATF1 is cooperating with law enforcement for financial gain. ATF1 has provided information and has made numerous controlled purchases in the past resulting in federal cases and federal search warrants, and the seizure of evidence. Investigators have found ATF1 to be truthful and reliable.

[3] On April 29, 2025, phone number (517) 528-4167 was queried through databases which yielded it is operated through AT&T Wireless. An ATF Intelligence Research Specialist queried associations to the target phone number through multiple public source databases, finding that Douglas is assigned as the user. It is important to note that the area code (517) belongs to the Lansing, MI area.

a business in the area of W. Edgewood Boulevard and Washington Avenue in Lansing, MI. ATF1 successfully purchased an MCD or "Glock Switch," alprazolam pills, and Oxycodone with pre-recorded ATF Agent Cashier Funds (ACF) from Douglas. Surveillance observed Douglas arrived in a 2015 Black Dodge Ram bearing MI Registration: EUY1579, the suspect vehicle. ATF1 advised Douglas was the only occupant of the suspect vehicle during the transaction. Law enforcement queried the registration of the suspect vehicle, and it returned to Douglas.

12. During the controlled purchase, Douglas could be heard saying, "It (MCD) goes right on that bitch. You ain't got to do nothing, it's pretty easy. You got a Gen5? Gen4?[4] I got a Gen17 big 9[5]." Douglas advised ATF1 that ATF1 could put a drum (magazine) with it. Douglas then advised ATF1 that the MCD may only work on a Gen4 (Glock model Gen4 pistol). Douglas also explained to ATF1 that he orders MCDs from a dark web site called "DH Gate." ATF1 added that he uses a fake name, an old address and a "bogus card" and that he orders them right from his phone (Subject Device).

13. A machine gun for the purposes of the National Firearms Act (NFA) under Title 26 U.S.C. § 5845(b) is defined as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

14. A machinegun conversion device (MCD) or "Glock switch" or "switch" or

---

[4] Referring to Glock model Gen4 or Gen5 pistols.
[5] A 9mm Glock model 17 pistol.

auto sear, is a mechanism that can be attached to the backplate of the slide of a Glock pistol. Glock pistols are designed to fire semi-automatic, which is defined as one projectile being fired from a firearm with each single pull of the trigger. Inside a Glock pistol is a mechanical part identified as a sear which stops the pistol from firing more than one round with each trigger pull. When the "Glock switch" or auto sear is inserted into the backplate of the Glock pistol it allows for the mechanical sear inside the firearm to not engage, thus making the pistol fire fully automatic or as a machine gun as defined in the paragraph above. I have spoken with Glock Inc., and have been advised they do not, and have never manufactured, these devices.

15. On April 30, 2025, ATF1 contacted Douglas on phone number 4167 and coordinated a controlled purchase of an MCD and a controlled substance from Douglas. The audio/visual recorded controlled purchase occurred at a business in the area of W. Edgewood Boulevard and Washington Avenue in Lansing, MI. ATF1 successfully purchased two (2) MCDs or "Glock Switches," alprazolam pills, and Oxycodone with pre-recorded ATF Agent Cashier Funds (ACF) from Douglas. Douglas arrived and departed in the suspect vehicle.

16. Based on my training and experience, based on my examination of the MCDs or "Glock switches" purchased from Douglas, they are auto sears which can convert or are designed to convert Glock semiautomatic handguns into machineguns under federal law. Under federal law, these "switches" have been determined to be machineguns in and of themselves.

17. On May 28, 2025, I conducted physical surveillance based upon

electronic surveillance and I located the suspect vehicle in the parking lot of 4600 South Pennsylvania Avenue, Lansing, MI. The suspect vehicle was parked in close proximity to the main entrance of building E.

18. I contacted ATF1 who advised me that Douglas shares a child with a female identified as "Cintia," with whom Douglas resides. An ATF Intelligence Research Specialist (IRS) was able to locate a "Cintia Varela" whose photograph was shown to ATF1. ATF1 that confirmed Varela is "Cintia," the woman with whom Douglas lives and shares a child.

19. According to an eTrace query on May 4, 2021, Douglas was caught in possession of a 9mm Glock model 26 semi-automatic pistol bearing S/N: AFHR161 on April 29, 2021. The purchaser of the firearm was Cintia Varela, who purchased the firearm on April 15, 2021, and was part of a multi-handgun purchase. The time from when Varela purchased the gun until police caught Douglas in possession of it was only 14 days.

20. On June 3, 2025, ATF1 contacted Douglas on phone number 4167 and coordinated a controlled purchase of MCDs from Douglas. ATF1 arranged to purchase fifteen (15) MCDs or "Glock switches" for $12,500. The audio/visual recorded controlled purchase occurred at a business in the area of W. Edgewood Boulevard and Washington Avenue in Lansing, MI. ATF1 purchased from Douglas what ATF1 believed were multiple MCDs or "Glock Switches" with pre-recorded ATF Agent Cashier Funds (ACF). Douglas arrived and departed in the suspect vehicle.

21. During a debrief with ATF1 following the purchase, it was determined that Douglas sold ATF1 fake MCDs that appear to some kind of wall mounting hanging

7

devices for $12,500.

22.    Prior to the controlled purchase, surveillance observed Douglas leave the main exit of Building E at 4600 South Pennsylvania Avenue and enter the suspect vehicle. Once the transaction was complete, Douglas returned to 4600 South Pennsylvania Avenue where surveillance observed him enter the same door for Building E that he had exited from prior to the buy. Douglas returned in the suspect vehicle.

23.    After Douglas was observed entering Building E on June 3, 2025, an investigator made contact with the apartment manager. The apartment manager provided a roster for those living in the entire apartment complex. The roster indicated that Cintia Varela resides in Building E, Apartment #51. The apartment manager provided Varela's lease agreement which showed that she moved into Apartment E51 approximately one month ago. Listed on the lease as also living there is the minor child-in-common between Varela and Douglas. The manager advised that Douglas is not listed on the lease, but he is "always there," referring to Apartment E51[6].

24.    It is important to note, that I have seen the suspect vehicle parked in the apartment complex parking lot each of the five times I have conducted surveillance over the two weeks leading up to June 3, 2025. The suspect vehicle is always parked in close proximity to the Building E entrance that Douglas was seen using on June 3.

25.    On June 4, 2025, I obtained a sealed FSW (Case No. 1:25-MJ-301) for 4600

---

[6] Investigators also viewed an application for tenancy which was filed by Varela. Varela listed her previous addresses as 33 Bee Jay Drive Lansing, MI and 3804 Burchfield Drive Lansing, MI. Both of these addresses have been associated with Douglas in the past as well.

8

South Pennsylvania Avenue Apartment #E51 Lansing, MI, the suspect vehicle, and the person of Douglas. During the execution of the FSW, Douglas was immediately contacted with the Subject Device in his hand. Douglas was searched and the Subject Device was placed into airplane mode and seized. Also inside the residence was Cintia Varela and Douglas and Varela's juvenile son. In addition to the Subject Device, the following items were seized:

- Computer; Qty: 1 EA; One silver laptop located in the west bedroom on the bed;

- Order of discharge from probation for Julian Douglas located in the west bedroom on the floor;

- One black 9mm 10 round Glock firearm magazine located in the west bedroom closet;

- Physical Currency: $65.00 (USD); $65 ($60 matches expended ACF buy money located in suspect vehicle in the center console;

- Ammunition: 469 Rounds; Manufacturer: REMINGTON; Caliber: 22 located in the west bedroom in the closet inside a Spiderman backpack;

- Drug: Other Pharmaceutical: 487 Tab; four hundred and eighty-seven Alprazolam pills located in the west bedroom under the bed side dresser; and

- Drug: Ketamine (and Its Analogues): 1 g; one (1) plastic baggie containing Ketamine weighing approximately 1 gram located in the west bedroom in dresser drawer by Douglas identification. Tru Narc returned positive for ketamine.

26.   Cintia Varela was interviewed during the execution of the FSW. Varela consented to an onsite search of her cell phone. The below listed photograph was taken of Varela's phone depicting the contact for Douglas as "Baby Daddy." The phone number associated is 4167, which investigators know to be Douglas' cell phone (Subject Device) number.

9



27.     Upon return to ATF Lansing, I requested that a Lansing Police Department (LPD) analyst use technology to put the Subject Device in preservation mode to retain its contents should the battery die, or should it surpass a timeline without usage[7]. The Subject Device was not searched nor accessed in this process.

28.     Based on the information set forth, the physical evidence seized, and my knowledge, training and experience in firearm and drug trafficking investigations and felon in possession of firearms / ammunition investigations, I respectfully submit there is probable cause to believe additional evidence of firearm and drug trafficking, being a felon in possession of a firearm / ammunition, and evidence of Douglas' being in possession of, and selling MCDs, will be found in electronic format on the Subject Device as the above listed three controlled purchases were set up between ATF1 and Douglas

---

[7] According to information provided by Apple, Apple iOS 18, which was released on September 16, 2024, and subsequent iOS updates include an "Inactivity Reboot" feature that automatically reboots an iPhone when it has not been unlocked for a certain period of time. According to Apple, for devices running **iOS 18.0** or **18.0.1**, the security reboot occurs 7 days from the last lock. For **iOS 18.1**, the reboot is 72 hours from the last lock.

10

through Douglas' use of the Subject Device. Douglas also told ATF1 during recorded controlled purchases that he orders MCDs from a dark web site called "DH Gate," from his phone (the Subject Device).

29. Based on the totality of the circumstances, there is probable cause to believe that the Subject Device will contain contact lists, telephone logs, photographs and other data that relate to firearm and drug trafficking and illegal possession of firearms / ammunition.

30. Based on the totality of the circumstances, there is probable cause to believe that the Subject Device will contain contact lists, telephone logs, photographs, dark websites accessed, order receipts from dark web MCD sales, the false identity and address used by Douglas to facilitate the purchase of MCDs from a dark website, and other data that relate to firearm and drug trafficking and illegal possession of firearms and ammunition.

31. The Subject Device is in storage at the ATF Lansing Satellite Office in Lansing, Michigan in the Western District of Michigan. The Subject Device has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Device was first seized by law enforcement on June 4, 2025.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

32. The warrant applied for would authorize the extraction and copying of electronically stored information, under Rule 41(e)(2)(B).

33. Based on my training and experience, participation in numerous firearm investigations and based upon information from veteran law enforcement officers, I

know:

34. It is common for illegal possessors of firearms to keep firearms and related materials—such as ammunition and magazines—in locations that they have frequent and ready access (i.e., in their residences, vehicles, and person). I also know that individuals who possess firearms often maintain possession of them for extended periods of time. I am aware that individuals who possess firearms also possess other items associated with their firearms including ammunition, magazines, holsters, cases, and records indicating the purchase, use, maintenance, or sale of such items.

35. Illegal possessors of firearms and traffickers use mobile telephones to facilitate the purchase and sale of illegal firearms. Mobile phones are portable, and some mobile telecommunications service providers do not require purchasers of the devices to provide their names and/or addresses, so firearms traffickers use the devices in an effort to avoid detection by law enforcement. Mobile phones often contain evidence indicative of illegal firearms possession and trafficking, including records of incoming and outgoing calls and text messages with suppliers and purchasers of firearms; voicemail messages; photographs of firearms, coconspirators, or currency; customer and supplier contact information; and, in the case of "smart phones," Global Positioning System (GPS) data indicating the location of the device at given points in time, providing evidence that the device was in high crime areas or evidencing the route/location used in trafficking/possessing illegal firearms. Additionally, illegal firearms traffickers typically maintain and use multiple mobile phones, often in the names of nominees, to facilitate sales, and frequently switch phones to evade detection by law enforcement.

36. I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37. *Forensic evidence.* This application seeks permission to locate forensic electronic evidence that establishes how the Subject Device was used, the purpose of the use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file) and

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

38. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

39. I respectfully submit that there is probable cause to believe that Douglas has engaged in violations of Title 18, U.S.C. § 922(o), possession of a machinegun, Title

21, U.S.C. § 841(a)(1), possession with intent to distribute controlled substances and Title 18, U.S.C. § 922 (g)(1), felon in possession of firearm / ammunition. I submit that this application supplies probable cause for a search warrant authorizing the examination of the Subject Device described in Attachment A to seek the items described in Attachment B.